IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20798-CR-COOKE

UNITED STATES OF AMERICA,

        Plaintiff,

VS.

CARLOS ANTONIO ORTEGA BONILLA,

        Defendant.

_____/

**MOTION TO COMPEL PRODUCTION OF LIMITED DISCOVERY OR IN THE ALTERNATIVE AN *IN CAMERA* REVIEW OF THE EVIDENCE RELIED UPON IN THE GOVERNMENT'S AFFIDAVIT IN SUPPORT OF MR. ORTEGA BONILLA'S EXTRADITION**

        Carlos Antonio Ortega Bonilla, through counsel, hereby files this Motion to Compel Production of Limited Discovery or, in the Alternative, an *In Camera* Review of the Evidence Relied Upon in the Government's Affidavit in Support of Mr. Ortega Bonilla's Extradition, and in support thereof states:

        1.     On June 7, 2011, Mr. Ortega Bonilla was charged by a Superseding Indictment.  On August 18, 2011, the United States sought the provisional arrest of Mr. Ortega Bonilla based upon said Indictment.  And, on September 1, 2011, Mr. Ortega Bonilla was arrested by the Colombian National Police and has remained in custody since that date.

        2.     On September 7, 2011, Mr. Ortega Bonilla retained undersigned counsel.  While Mr. Ortega Bonilla remains in custody in Colombia, the undersigned entered his permanent appearance in this matter and is presently counsel of record.

3.      Mr. Ortega Bonilla, a 62 year-old, highly trained, lifelong and principled professional of considerable prestige in aviation, and his family, all hard-working, highly educated individuals, immediately impressed upon counsel, by providing him exculpatory evidence, that Mr. Ortega Bonilla was wrongfully arrested.  In an effort to immediately establish his innocence, Mr. Ortega Bonilla's family retained the services of two investigators, in the hopes they could immediately illustrate to the United States and Colombian law enforcement that he was not part of this indicted drug conspiracy and in no way knowingly or intentionally sought to smuggle drugs into the United States and/or move currency in support of those illegal activities.  Since then, Mr. Ortega Bonilla's defense team has been attempting to challenge the arrest and extradition of Mr. Ortega Bonilla, including requesting a meeting with members of the executive branch of the Colombian government to present evidence of his innocence.

4.      In support of the extradition of Mr. Ortega Bonilla, a Special Agent from the DEA executed an affidavit under oath sworn and subscribed before Magistrate Judge Peter R. Palermo, stating that the agents overheard, in lawfully intercepted telephone calls, Mr. Ortega Bonilla knowingly and intentionally discussing with others the details of cocaine shipments, the purchase of an aircraft with the intent to transport narcotics and the movement of money to ensure this could occur.  *See* Affidavit in Support of Extradition in Case 10-20798-CR-Cooke.  And that the aircraft business owned by Carlos Ortega Bonilla was "used to move and hide narcotics proceeds that they intended to use to purchase aircraft." *Id.* at ¶ 34.  Respectfully, Mr. Ortega Bonilla seeks to challenge, in Colombia (and if necessary the U.S.), the accuracy of the identification of his voice, and the purported conversations that led federal agents to conclude he was part of drug smuggling activities.

5.      Edward J. Kacerosky Jr., a retired and highly decorated Special Agent with Immigration and Custom Enforcement, with permission of counsel, therefore began an entirely independent investigation to determine Mr. Ortega Bonilla's involvement in the alleged conspiracy and whether, as he and his family professed, the Government may have mis-identified Mr. Ortega Bonilla as a drug trafficker.  Mr. Kacerosky flew to Colombia, met with Mr. Ortega Bonilla, his family, his colleagues, and one of his co-defendants, in an effort to ascertain the truth.  As Mr. Kacerosky outlines in his sealed *ex parte* affidavit which will be filed with the Court, Mr. Ortega Bonilla's family members, his circumstances, his reputation, and the facts, led him to believe that the Government in fact had in all probability misidentified Mr. Ortega Bonilla and that an innocent man is very likely incarcerated in a Colombian prison.

6.      As a result of his own independent investigation, Mr. Kacerosky first reached out to the Colombian authorities through Colombian counsel to discuss his findings and concerns and to request a copy of the tapes which purport to contain recordings of intercepted telephone calls of Mr. Ortega Bonilla discussing details of cocaine shipments and various details of the loads.  But Mr. Kacerosky was told by Colombian authorities that the United States Government had custody over the tapes since it was a U.S. prosecution.  At this point, Mr. Kacerosky contacted AUSA Hoffman who advised that the tape recordings had been reviewed by DEA agents in addition to the Colombian National Police, and that the tapes contained strong evidence against Mr. Ortega Bonilla.  After further investigation, including five trips to Colombia, Mr. Kacerosky presented the defense's evidence, which strongly supported Mr. Ortega Bonilla's innocence, directly to DEA managers in Bogota, Colombia and to AUSA Dick Gregory.  These individuals then presented this information to AUSA Hoffman.  Nevertheless, AUSA Hoffman maintained her position that she would not

provide Mr. Kacerosky with a copy of the audio recordings or the opportunity to privately review the recordings even outside the presence of defense counsel.

7.     Moreover, undersigned counsel independently requested a copy of the relevant tapes that supported Mr. Ortega Bonilla's extradition and his request was also declined by AUSA Hoffman.  Counsel expressed serious concerns about the case against Mr. Ortega Bonilla and that he wished to challenge his pending extradition.  AUSA Hoffman advised that she was aware of the defense's concerns, acknowledging her conversations with Mr. Kacerosky, but advised that she was "confident in the case" and she would address any concerns once he arrives to the United States.  *See* Email dated March 8, 2012.

8.     The defendant's request of a copy of the audio tapes (i.e., discovery) pre-extradition is not an usual one.  In *United States v. Devin Jackson*, 10-20806-CR-KING, AUSA Brian Dobbins provided undersigned counsel with discovery, including audio tapes for a defendant pending extradition from Costa Rica.  In *United States v. Ferguson*, 05-20859-CR-HUCK, AUSA Dick Gregory provided defense counsel with discovery for two defendants pending extradition from Trinidad and Tobago.  In these situations, like here, the Government had already provided discovery to defendants in the United States, so the government did not suffer any prejudice by also providing discovery to the defendants that were pending extradition.  And, the examination of these tapes are critical.  A voice misidentification recently led to the dismissal of a federal indictment for a Colombian defendant wrongfully accused of being part of a drug conspiracy based on this misidentification which erroneously led to his extradition.  *See United States v. William Humberto Gil Perenguez*, 07-20490-CR-GRAHAM.

9.     The importance of these tapes cannot be overstated: they are the missing piece, the

key to determining whether Mr. Ortega Bonilla has been misidentified by the Government and wrongfully jailed.  To preclude Mr. Ortega Bonilla from reviewing the audio tapes that allegedly formed the basis of his arrest in Colombia and the United States's intention to extradite him here, violates the principles of substantive and procedural Due Process and fundamental fairness.  The defense wholeheartedly believes that these tapes will exculpate Mr. Ortega Bonilla - therefore,  the possibility that an innocent person is currently in custody should be of great interest to the United States.  Yet, despite Mr. Kacerosky and counsel's best efforts, the government has refused to allow the defense team to review the audio recordings until Mr. Ortega Bonilla arrives in the United States. Therefore, Mr. Ortega Bonilla urges the Court to consider his Motion, evaluate the evidence as presented in Mr. Kacerosky's sealed affidavit, and compel the Government to provide a copy of the audio recordings so that Mr. Ortega Bonilla can challenge his extradition and  prove his innocence. In the alternative, Mr. Ortega Bonilla requests an *In Camera* review of the evidence relied upon in the Government's affidavit in support of Mr. Ortega Bonilla's extradition.

Respectfully submitted,

/s/ Marc David Seitles

_____
Marc David Seitles
Fla. Bar No. 0178284

Penthouse One
40 N.W. Third Street
Miami, Florida 33128
Telephone No. (305) 403-8070
Facsimile No. (305) 403-8210
Email: mseitles@seitleslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 4, 2012, undersigned electronically filed the

foregoing document with the Clerk of Court using CM/ECF which will serve Assistant United

States Attorney Andrea Hoffman.

/s/ Marc David Seitles

_____

Marc David Seitles, Esq